## Howton, etc., By etc. v. Sovereign Camp Woodmen of the World.

(Decided January 29, 1915.)

### Appeal from Hopkins Circuit Court.

1. Insurance—Fraternal Association—Death Benefit to Member of—When Association Not Liable For.—Where the constitution of a fraternal association provides that if a member holding a cer-tificate of insurance therein becomes suspended for non-payment of an assessment, and is not, prior to his death, while in good health and within three months after the assessment became due, reinstated to membership in the order by the payment of such assessment and all arrearages then owing by him, such payment to be accompanied by a writing signed by himself and witnessed, stat-ing that he is in good health, the insurance association, upon the insured's death, will not, in the absence of a compliance by the latter with the above provision of the constitution, be liable at the suit of the beneficiary named in the certificate of insurance for the amount thereof; and the fact that the insured before his death and within the three months indicated, sent to the clerk of the local camp, of which he was a member, the money to pay the assessment, for the non-payment of which he had been sus-pended, and all arrearages owing by him, even if it be conceded that the sending of the accompanying written statement as to his health was not essential, did not have the effect to reinstate

him to membership or entitle the beneficiary to the insurance, if he was at the time not in good health.

2. Insurance—Instructions—When Not Prejudicial to Appellant Cannot Give Ground for Reversal.—As the instructions given in this case ignored the provision of the association's constitution requiring the furnishing by the insured of the attested written statement as to his being in good health in order to secure his reinstatement to membership, and advised the jury that the question whether the payment by the insured of the assessment and arrearages owing by him had the effect to reinstate him, depended upon whether he was at the time of such payment in good health, were more prejudicial to the association than to the appellants and probably more favorable to the latter than they deserved, their complaint of them is without merit.

TEAGUE & FRANKLIN for appellants.

YOST & LAFFOON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Sovereign Camp Woodmen of the World, is a fraternal benefit society, incorporated under the laws of the State of Nebraska. It issues benefit certificates, conducts an insurance business among its members, and has under its jurisdiction various local camps; one of these, known as Pine Grove Camp No. 160, being located at Dalton, Kentucky. Appellee issued to Ben Howton, a member of Pine Grove Camp No. 160, a beneficiary certificate dated February 24, 1910, but not to become effective until March 12, 1910, whereby it agreed to pay to Willie Howton and Allie Howton, brother and sister of Ben Howton, at the death of the latter, $500.00 as a death benefit, should his death occur during the first year of his membership and while he was a member of the order in good standing. Ben Howton died December 1, 1910, and appellee, having refused to pay to the beneficiaries named therein, Willie Howton and Allie Howton, the death benefit of $500.00, they brought this action in the Hopkins Circuit Court, the latter, an infant, suing by Peter Howton, her next friend, to recover the same.

By its answer appellee interposed the defense that the insured, Ben Howton, was not a member of the order at the time of his death, but was then under suspension for non-payment of an assessment designated as No. 240, which suspension occurred October 1, 1910, and caused a forfeiture of his certificate of insurance; that he was

never reinstated before his death, for which reasons the certificate imposed no liability upon appellee for the death benefit claimed by the beneficiaries. The trial of the case resulted in a verdict for appellee, and from the judgment entered thereon the beneficiaries named in the policy have appealed.

It appears from the evidence that Ben Howton became sick and called in a physician on the 27th day of November, 1910, and that on the 28th day of November, 1910, he sent to the clerk of his camp all assessments and dues then in arrears and owing by him. One of these assessments was No. 240, for the failure to pay which on October 1st his suspension as a member of the order had resulted, and the other was assessment No. 241, which became due November 1, 1910. He did not, however, as required by the constitution and by-laws of the order, accompany the payment thus attempted to be made with a written statement and warranty, signed by himself and witnessed, showing that he was then in good health. On December 1, 1910, he was operated on for appendicitis and died two hours after the operation was performed.

The moneys which had been sent by him to the clerk of his camp were forwarded by the latter to the Sovereign Clerk of the Sovereign Camp on the 3rd day of December, 1910, two days after Howton's death, and were received by the latter without knowledge of his death; but he returned them to the clerk of Howton's camp with the direction that they be returned to Howton. This action of the clerk of the Sovereign Camp was taken because of the suspension of Howton and his failure to deliver to the clerk of his camp with the payment of the moneys the written statement and warranty, signed by himself and witnessed, that he was in good health at the time he paid the assessments in arrears, and it appears from the testimony of the clerk of the local camp and other witnesses that Howton was sick when he sent to him the money in payment of the assessments in arrears.

Sections 108 and 109 of the constitution of the Sovereign Camp, which were made a part of the certificate of insurance, are as follows:

"Sec. 108. On or about the 20th day of each month the Sovereign Commander and chairman of the Sovereign Finance Committee shall determine the number of assessments, if any, necessary to provide for the pay-

ment of death benefits, monuments and total disability claims, and shall so notify the Sovereign Clerk."

"Sec. 109. (a) Every member of this Order shall pay to the Clerk of his Camp each month one assessment payment, as required in Section 56, which shall be credited to and known as 'Sovereign Camp Fund,' and he shall also pay such Camp dues as may be required by the by-laws of his Camp. He shall pay any additional assessments for the Sovereign Camp fund and Camp dues, or either, which may be legally called.

"(b) If he fails to make any such payment on or before the 1st day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

Assessments Nos. 240, 241 and also 242 were regular assessments as provided in Sections 108 and 109 of the constitution, *supra,* 240 being due October 1st, 241 November 1st, and 242 December 1st, 1910. So assessments 240 and 241 were past due and therefore in arrears when attempted to be paid by Howton November 28th. The failure to pay assessment 240 on October 1, 1910, under the provisions of Sub-section (b), Section 109, *supra,* automatically suspended Howton from membership in the order, and by a further provision of the same subsection his beneficiary certificate thereby became void and continued so during such suspension.

Section 115 of the constitution provides:

"(a) Should a suspended member pay all arrearages and dues to the Clerk of his Camp within ten days from the date of his suspension, and, if in good health and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again become valid.

"(b) After the expiration of ten days, and within three months from the date of suspension of a suspended member, to reinstate he must pay to the Clerk of his Camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement, and waiving all rights thereto if such written statement and warranty be untrue.

"(c) Any attempted reinstatement shall not be effective for that purpose unless the member in fact be in

good health at the time, and if any of the representa-
tions or statements made by said applicant are untrue,
then said payment shall not cause his reinstatement nor
operate as a waiver of the above conditions.''

The several sections and sub-sections of the consti-
tution of the order quoted, by the terms of the certifi-
cate of insurance, constituted material parts thereof
and were binding upon the insured and beneficiaries.
Therefore, under his contract, expressed in the certifi-
cate, Howton's suspension automatically resulted from
his failure to pay the assessment due October 1st, and
such failure is admitted both as to the assessments of
October 1st and November 1st. It is also admitted that
neither of these assessments was paid within ten days
after it became due, which, if done, and Howton had been
in good health and not addicted to the excessive use of
intoxicants and narcotics, would have had the effect to
automatically reinstate him to membership in the order
and revive his certificate, as provided by Sub-section
(a), Section 115, of the constitution. But, notwithstand-
ing such failure, he might, as allowed by Sub-section (b)
of Section 115, at any time after the expiration of ten
days and within three months of the date of his suspen-
tion resulting from the non-payment of the assessment
due October 1st, have been reinstated to membership in
the order by paying to the clerk of his camp all arrear-
ages and dues, provided he at the same time delivered
to him the written statement and warranty, signed by
himself and witnessed, that he was in good health and
not addicted to the excessive use of intoxicants or nar-
cotics, and provided further that the statements as to
his health contained in the writing and warranty were
true. But neither of the courses indicated was pursued
by Howton. It is true that on November 28, 1910, when
he sent to the clerk of his camp all arrearages and dues
then owing by him, such payment was within three
months of the date of his suspension, but the payment
did not have the effect to reinstate him to membership
in the order or revive his certificate of insurance, be-
cause it was unaccompanied by the written statement and
warranty, signed by himself and witnessed, that he was
then in good health, and he was, in fact, then afflicted
with appendicitis.

The trial court seemed to be of opinion, however,
that the delivery by Howton to the clerk of his camp of

the statement showing his good health, signed by himself and witnessed, at the time of the payment to the latter of all assessments and dues then in arrears and owing by him, was not necessary in order to entitle the beneficiaries in the certificate of insurance to recover of appellee the death benefit named therein, but that such recovery might be had upon a showing that Howton was in fact then in good health. Manifestly appellants cannot complain of this ruling, for it relieved them of attempting to establish a fact they were unable to prove, namely, that there had been furnished appellee by Howton when he paid the arrearages owing by him a written statement, signed by himself and witnessed, showing his health to be good, and allowed the question whether he was entitled to reinstatement to membership in the order to be determined upon the evidence introduced as to the state of his health when the arrearages were paid.

The trial court's construction of the contact was doubtless based upon the theroy that if Howton was not in good health when the arrearages were paid, the furnishing of the written statement required by Section 115 of the appellee's constitution would not have entitled him to reinstatement in the order; and that appellee's denial that his health was then good would have required appellants to establish by proof the warranty of the written statement that it was good.

The instructions given the jury are as follows:

"1.    The court instructs the jury that Sovereign Ben Howton stood properly suspended from the order and his certificate was null and void on and after October 10th, 1910, and the acceptance of the payments by the clerk in November did not have the effect to revive the certificate and his membership unless the said Ben Howton, at the time of such payment, was in good faith; and the jury will find for the defendant, unless they believe from the evidence that said Ben Howton, at the time the payments were received by the clerk in November, was in good health.

"2.    By the term 'in good health,' as used in the foregoing instruction is meant that Ben Howton was in such condition of health that he could then have truthfully made and filed with the clerk of Pine Grove Camp a statement and warranty that he was then in good health, believing at the time in good faith that he was

not afflicted with any bodily infirmity that would materially affect the risk of the defendant.

"3. If the jury believe from the evidence that Ben Howton was in good health as defined in the foregoing instruction, at the time the assessments were paid in November, they will find for plaintiffs $500.00.''

We are unable to see that appellants were prejudiced by these instructions. In Royal Neighbors of America v. Laufman, 158 Ky., 358, which was an action upon a benefit insurance certificate, the defense interposed was that the monthly assessment was not paid, which caused the suspension of the insured, and the insurance company relied upon the failure of the insured to comply with a provision in its by-laws as to reinstatement, which provision was much like the one of similar character in this case, except that it did not require the written statement and warranty as to the insured's good health to be furnished at the time of the payment of the arrearages of dues and assessments necessary to reinstatement. We held that the question whether the insured was in good health at the time of the payment by her of the amounts due and in arrears, was properly submitted under the instructions of the court to the decision of a jury.

It is, however, insisted for appellants that the assessment for the non-payment of which Howton was suspended was a special assessment, for which reason notice of it to him was a prerequisite; and that, as such notice was not given, there could be no suspension for the failure to pay it. We find nothing in the record upon which to rest this contention. There is neither allegation in the pleadings nor proof that the assessment was made for a special purpose, but, on the contrary, it is apparent from the evidence that assessment No. 240, as well as Nos. 241 and 242, were regular assessments under Sections 108 and 109 of appellee's constitution. They were not made by appellee's officers, but were such assessments as were to be paid to the clerk of his camp by Howton each month as provided by Section 109 of the constitution.

There was some contrariety of proof as to the condition of Howton's health at the time the past due assessments were attempted to be paid by him, but we think the weight of the evidence conduced to prove that his health was bad at that time; that he became sick of ap-

pendicitis and called in a physician on the 27th day of November, 1910, and had not recovered from this illness on the 28th, when he sent to the clerk of his camp the arrearages then owing by him. Indeed, according to the evidence, his illness became more pronounced and resulted in his death on the 1st day of December, 1910, following an operation for appendicitis. It appears that the money he paid the clerk of his camp during his illness was sent to the clerk of the Sovereign Camp on the 3rd day of December, 1910, two days after his death.

As there was evidence from which the jury might reasonably have reached the conclusion that Howton was not reinstated to membership in the order or entitled to reinstatement, and the record fails to show any error upon the part of the trial court that can be said to have been prejudicial to the appellants, no reason is apparent for disturbing the verdict. Therefore, the judgment is affirmed.