## Sovereign Camp Woodmen of the World v. Durbin, et al.

## Durbin, et al. v. Sovereign Camp Woodmen of the World.

(Decided February 16, 1923.)

### Appeals from Webster Circuit Court.

1.  Insurance — Mutual Benefit Insurance — Suspension — Notice.—
    Where the constitution and by-laws, made a part of a beneficiary
    certificate issued to a member by the Sovereign Camp of a fra-
    ternal society, provide that the member shall be suspended and
    his certificate become void if he fails to give notice to the clerk
    of the local camp of which he is a member that he has engaged in
    an employment classed as hazardous and pay an increased rate
    therefor within thirty days after becoming so engaged, and there
    is no provision for such notice to any one else, the clerk of the
    local camp is the agent of the Sovereign Camp for the purpose
    of receiving such notice, and notice to the local clerk is notice
    to the Sovereign Camp.

2.  Insurance— Mutual Benefit Insurance—Suspension— Estoppel.—
    Where, after such notice, the Sovereign Camp continued to re-
    ceive dues from the member and treat him as a member in good
    standing for nearly two years and until his death while engaged
    in the same hazardous employment, it waived the forfeiture and
    is estopped to deny liability by reason of the failure of the mem-
    ber to pay the increased dues provided for the hazardous em-
    ployment in which he was engaged.

3.  Insurance— Mutual Benefit Insurance— Forfeitures.—Where the
    benefit certificate provided that the society and member would
    abide and be bound by all laws of the society in force at the time
    the certificate was issued or thereafter adopted, and the society
    changed its law with reference to a forfeiture for failure to give
    notice and pay increased dues when a member engaged in a
    hazardous employment, before the death of the member, so as to
    provide for payment of two-thirds of the certificate for such failure,
    the court correctly adjudged to the deceased member's beneficiaries
    two-thirds of the amount of the certificate, the member having
    failed to pay the increased dues provided for such hazardous em-
    ployment.

4.  Insurance—Forfeitures.—In an action upon a contract of insur-
    ance, the defendant cannot complain that plaintiff's evidence is
    insufficient to avoid a forfeiture relied upon as a defense, where
    it is sufficient to avoid the forfeiture as defectively alleged in
    the answer, but would not have been sufficient if the forfeiture had
    been properly alleged.

5. Insurance—Pleading—Demurrer.—Failure of the plaintiffs to plead with reference to a provision in the insurance contract, which under certain conditions exclusively within the knowledge of the defendant would lessen but not defeat a recovery, did not render the petition demurrable.

VANCE & HEILBRONNER and E. L. CRAIG for appellant.

HENDERSON & TAYLOR for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1909, Walter C. Durbin became a member of the local camp at Poole, Kentucky, of the Woodmen of the World, and as such applied for and received a beneficiary certificate from the Sovereign Camp W. O. W. entitling his named beneficiaries to $1,000.00 upon his death occurring while he was in good standing as a member of the local camp, and upon condition that he was not then in default of any obligation imposed upon him by the constitution and by-laws of the Sovereign Camp. After his death in October, 1919, and upon proof thereof, his beneficiaries demanded of the Sovereign Camp payment of the $1,000.00 which was refused, and this suit followed.

Payment was refused upon the ground that in 1917 decedent entered a hazardous occupation and failed to notify the clerk of the local camp within thirty days, or pay the additional dues for the increased hazard as provided by the constitution and by-laws; that as a consequence thereof he was automatically suspended from membership in the order, and his beneficiary certificate rendered void.

Upon the trial of the case, at the completion of the evidence each party asked for a directed verdict, and the court, under a provision of the constitution and by-laws, and in accordance with the alternative prayer of plaintiffs, instructed the jury to find for the plaintiff the sum of six hundred sixty-six and two-thirds dollars, and entered judgment in accordance therewith. From that judgment the parties prosecuted these two separate appeals, which have been heard together.

For the plaintiffs it is contended that they were entitled to a verdict for $1,000.00, and for the defendant that plaintiffs were entitled to nothing. There is no conflict in the evidence whatever, hence the court did not err in directing a verdict.

The only issues of fact raised by the pleadings, if any, are (1) whether the decedent entered a hazardous employment as defined by the constitution and by-laws of the order, (2) whether if he did so, he seasonably notified the clerk of the local camp and paid to him the additional dues provided in such cases, and (3) whether such notice and increased payment were waived.

The evidence shows without contradiction (1) that decedent became a freight train brakeman in the fall of 1917, and continued as such until his death in an accident to the freight train upon which he was working October 22, 1919; (2) that in March, 1918, he notified the clerk of his local camp of such employment and asked the clerk what his dues would be for a year from that date, and that he paid to the clerk the amount be asked, which did not however include the $3.60 which should have been included for his increased hazard, and that the Sovereign Camp thereafter sent deceased the following receipt:

"WOODMEN OF THE WORLD

"Omaha, Nebraska, 5/6/1918.

"This is to certify that Sovereign W. C. Durbin, a member of Evergreen Camp No. 58 at Poole, State of Kentucky, has paid the Sovereign Camp W. O. W. in advance twelve installments commencing with No. 3 for March, 1918.

"(Signed) W. A. FRAZIER,
Sovereign Commander.
"J. T. YATES,
Sovereign Clerk.

"Series F, No. 85978."

That in March, 1919, he again notified the clerk of his employment as a railway brakeman, and paid him the amount he said would be necessary to pay his dues up to April 1, 1920, and that thereafter the Sovereign Camp

sent the following receipt therefor to the clerk of the local camp, who delivered it to decedent:

"WOODMEN OF THE WORLD

"Omaha, Nebraska, 7/3/1919.

"This is to certify that Sovereign W. C. Durbin, a member of Evergreen Camp No. 58 at Poole, State of Kentucky, has paid the Sovereign Camp W. O. W. in advance twelve installments, commencing with No. 3, for March, 1919.

"(Signed) W. A. FRAZIER,
Sovereign Commander.
"JOHN T. YATES,
Sovereign Clerk.

"Series H, No. 30344."

(3)   That deceased was never suspended by the local or Sovereign Camp, or notified that he was not in good standing, but was treated and carried upon the books of the local camp as a member in good standing; that upon the books of both the local and Sovereign Camp he appeared as a member with his dues fully paid to April 1, 1920, when he was accidentally killed on October 22, 1919, and that the clerk of the local camp never notified the Sovereign Camp of decedent's hazardous employment.

Subsection (b) of section 43 of the constitution and by-laws reads:

"If a member engages in any of the occupations or business mentioned in this section he shall, within thirty days, notify the clerk of the camp of such change of occupation, and while so engaged in such occupation shall pay on each monthly installment or assessment thirty cents for each one thousand dollars of his beneficiary certificate, in addition to the regular rate. Any such member failing to notify the clerk and to make such payments as above provided shall stand suspended and his beneficiary certificate be null and void."

By a preceding subsection "Conductors and brakemen on railway freight trains" are engaged in hazardous employments.

Subsequent sections providing for reinstatement of a suspended member are unimportant, since no reinstatement was ever attempted.

Subsection (g) of section 24 provides that the sovereign clerk, as soon as he receives the required monthly

report from a local camp "Shall mail a notice to the last known address of every member reported suspended in said report, informing him of the requirements of the laws of this society to become reinstated." Other provisions are that officers of local camps cannot waive any failure of a member thereof to comply with the laws of the Sovereign Camp, and that every member is to comply not only with existing laws but is to be bound by and comply with all changes therein.

In July, 1919, subsection (b) of section 43, *supra,* was changed to read as follows:

"Any member who is now and any member who shall hereafter become engaged in any of the above described classes of business classified as hazardous shall, within thirty days after this section becomes effective or after entering such occupation or employment, notify the sovereign clerk, in writing, that he has entered such occupation or employment, and within said time pay to the clerk of the camp of which he is a member one and one-fourth (1¼) times the rate of assessment as set forth in sections 60 and 61 of these laws, and continue to pay the same monthly as long as he is engaged in such hazardous occupation. If such member so engaging in such hazardous occupation does not pay one and one-fourth (1¼) times the rate of assessment required of him monthly as aforesaid, then, in the event of his death, there shall be paid to his beneficiary only two-thirds (2/3) of the amount which would have been due upon the death of the member if he had not engaged in such hazardous occupation. The fact that such member engaging in such hazardous occupation does not pay one and one-fourth (1¼) times the rate of assessment required of him by the constitution and laws of the society as aforesaid shall be conclusive evidence that he does not desire to pay the extra rate required of persons engaged in a hazardous occupation and that the society shall pay to the beneficiary under his certificate only the sum of two-thirds (2/3) of the amount which would have been due had he not engaged in such hazardous occupation."

It was under this last provision that the court gave plaintiffs judgment for two-thirds of the face of the beneficiary certificate, as they prayed should be done in the event they were not entitled to the full sum provided therein.

That the judgment of the court is correct if this section of the laws of the society is applicable is apparent, since deceased was engaged in a hazardous employment, he did not pay the increased rate provided therefor, and this section does not provide for a forfeiture. It is insisted however by defendant that this section is not applicable because deceased automatically ceased to be a member of the society from and after about October, 1917, by his failure to notify the clerk of his local camp within thirty days he was engaged in a hazardous employment and to pay the increased dues required therefor. Whether or not this is true, is the question upon which the whole case turns, despite some minor contentions that will be briefly discussed later.

Assuming, but not deciding, that the provision for suspension of the member in subsection (b) of section 43, *supra*, is self-executing and that deceased was suspended automatically thereunder by his failure to give notice and pay extra dues within thirty days after he became a railway brakeman, unless suspension was waived by the Sovereign Camp, as is defendant's contention, we are yet unable to agree with their conclusion based thereon that the section as amended in July, 1919, was inapplicable to deceased, since we think the Sovereign Camp clearly waived a suspension of deceased and a forfeiture of his benefit certificate.

It will have been noticed that the clerk of the local camp was the person named in the constitution and by-laws to whom notice was required to be given by a member engaging in a hazardous employment prior to the amendment of 1919 requiring written notice to the sovereign clerk, and there was no requirement of such notice to any one else. Hence notice to the clerk of the local camp was necessarily notice to the Sovereign Camp, the insurer, in March, 1918, and March, 1919, and its claim that it had no notice thereof until after decedent's death, when it tendered to his administrator the dues he had paid after becoming so engaged, is wholly groundless.

That the local camp clerk was the agent of the Sovereign Camp for the purpose of receiving such notice as well as the dues, is even more clearly apparent from further provisions of the laws of the society. By these it was made the duty of the local clerk to report to the Sovereign Camp his collections in detail and for his faithful performance of these duties he was required to give to the Sovereign Camp a bond. He did report the

payments made by deceased, and it issued deceased receipts therefor, and continued him on its books as a member in good standing until his death. Moreover it was the duty of the local clerk to report suspensions, since it is provided, as we have seen, that the sovereign clerk, upon receipt of the monthly reports of the local clerk, shall notify each member in suspension of the means by which he could be reinstated, and this was not done. Hence it is clear the suspension was waived, not by the clerk of the local camp, whom we might concede could not waive anything, but by the Sovereign Camp, which, as is conceded, could waive both a suspension and a forfeiture.

It would be absurd to hold that the local clerk was the agent of the deceased member in receiving notice from himself of his employment in a hazardous employment or the premium on his insurance policy, when obviously and necessarily he was performing these services for the Sovereign Camp, the insurer, and to which he was by its laws not only required to make monthly reports of the services he performed for it, but to give bond for his faithful performance of such services. We need not, however, decide whether or not the local clerk in such circumstances could waive the necessity of notice, or excuse a failure to give it or pay the increased dues, and we therefore express no opinion on those questions, but we do hold that notice to him was notice to the Sovereign Camp of deceased's hazardous employment, and that when with this notice it continued to accept payments of dues from deceased and treat him as a member, it cannot be heard to say, after his death, that he was in suspension and not a member of the society all of this time. National Council J. O. U. A. M. v. Thomas, 163 Ky. 364, 173 S. W. 813; Scruggs' Guardian v. Knights & Ladies of Security, 187 Ky. 544, 219 S. W. 1054.

From this it follows that deceased was a member of the society when the amendment of July, 1919, was adopted, and it is applicable here, since by the terms of the contract of insurance all parties were bound not only by the laws as they existed when it was issued, but by those enacted since. Hence plaintiffs were entitled to recover on the policy, but only to the extent of two-thirds of the amount named therein, as adjudged by the court.

It is earnestly insisted in a reply brief for defendant, that deceased did not give to the local clerk notice that

he was engaged as a brakeman on a *freight* train, but only that he was employed as a brakeman on the L. & N. R. R., and that this was not notice of being engaged in a hazardous employment under the society's laws, since braking on a passenger train is not classed as such hazardous employment. This contention would be unanswerable if it were not for the fact that the allegation in the answer of decedent's employment is couched in precisely the same terms. Hence if defendant in its answer stated facts to support a forfeiture, plaintiffs proved an avoidance thereof; and if plaintiffs did not prove an avoidance, defendant did not allege a forfeiture, so that in either view the result is the same to defendant. It is evident therefore that all parties on the trial treated the expression "braking on a railroad train" as meaning braking on a freight train, as without dispute deceased was engaged, and that this contention—advanced for the first time by way of reply brief—is an afterthought.

Besides, a reversal for this reason to either party would benefit neither, as all parties upon another trial would avoid this inaccuracy in describing what they plainly meant on the last trial. There is therefore no merit in this contention.

It is finally insisted by defendant that the petition did not state a cause of action, and that the court therefore erred in overruling its motion for a judgment, notwithstanding the verdict. The basis for this contention is that the benefit certificate provides for the payment of $1,000.00 to the beneficiaries, provided: "that the payment of the certificate or any part thereof should be based upon the assessment on the entire beneficiary membership of the order in good standing, the full amount when so paid in no case to exceed the amount of one such assessment, nor shall any portion so paid be in excess of a like proportion of a single assessment on the entire beneficiary membership at the time," and that plaintiffs did not allege that the whole or any part of the $1,000.00 could be paid upon one assessment of the beneficiary membership. This provision was clearly inserted in the policy for the benefit of the defendant, and to enable it, if perchance the insured could get safely by all the other provisos contained in its 86 pages of printed by-laws, to scale the amount to be paid; and if applicable, afforded an opportunity for a defense in part only.

The plaintiffs, if they understood just what this particular proviso meant, could not have plead anything about it but ignorance, since all of the information necessary therefor was wholly in the keeping and knowledge of defendant. We are therefore of the opinion that the petition stated a cause of action, without having plead anything with reference to this and the innumerable other provisos with which a right to recover was hedged about, and upon which defendant might possibly have, but did not, rely as a defense.

Judgment affirmed.