# International Brotherhood of Boilermakers, Iron Shipbuilders, Welders & Helpers of America v. Bogle's Adm'x et al.

(Decided Dec. 14, 1937.)

BEN V. SMITH & SON and BEN D. SMITH for appellant.

R. C. TARTAR and ANDREW HAEFNER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Joe Bogle was a boilermaker, and worked in the Cincinnati, New Orleans & Texas Pacific Railway shops

at Somerset. In 1916, he was initiated into lodge No. 419 of the International Brotherhood of Boilermakers, Iron Shipbuilders, Welders & Helpers of America, an international fraternal order and labor union with its headquarters at Kansas City, Kan. The order provided insurance for its members and issued to Bogle a certificate insuring his life for $1,000 in the event of natural death, and in the sum of $2,000 in the event of accidental death. Joe Bogle died as a result of an accident on October 14, 1934. This action was brought by his administratrix to recover $2,000 double indemnity. The Brotherhood defended on the ground that Bogle had not complied with the by-laws of the order, and was not a member in good standing. A trial before a jury resulted in a verdict in favor of plaintiff for $2,000. The Brotherhood appeals.

The applicable provisions of the constitution and by-laws are as follows:

"Article VI, section 2, page 67. All applications for membership to be made on blank furnished for that purpose, signed by applicant, and recommended by a member in good standing and indorsed by two other members who know the candidate, and must be read at a regular stated meeting, and laid over for the next meeting when they will be balloted for. An applicant for membership coming from a city in which there is a Subordinate Lodge organized shall not be initiated or reinstated by any other Subordinate Lodge, unless the consent of the International President has been obtained. No Subordinate Lodge will be allowed to change the classification of any member, other than apprentices after completing their apprenticeship, without the consent of Subordinate Lodge he came from and International President

"Article VIII, section 1, page 72. All dues should be paid monthly in advance. When a member allows his dues, assessments or fines to become two months in arrears he will be suspended from all rights, privileges and benefits of this International Brotherhood. Such members must pay the reinstatement fee of two dollars for mechanics and one dollar for helpers or apprentices, plus all back dues. If dues are not more than six months in arrears for which the current month and reinstate-

ment receipt will be issued for the month of reinstatement, and a regular monthly due receipt for the other months for which dues are paid, plus insurance premium for first two months he is delinquent and the month in which he is reinstating.

"Article VIII, section 3, page 73. The original application for reinstatement with signature of delinquent thereon and cost of due receipts, due and reinstatement receipts, plus necessary insurance premiums, must be forwarded to the International Secretary-Treasurer, and the International Secretary-Treasurer shall issue all receipts necessary in connection with such reinstatement.

"Article XII, section 14, pages 49 and 50. Members making application for withdrawal cards as provided for in Article XV, section 8, of this Constitution and By-Laws, and who may desire to continue in force insurance provided for in this Article shall make application for such continuance of such insurance to the International Secretary-Treasurer at least thirty (30) days prior to the issuance of such withdrawal cards. No withdrawal card shall be issued until such application is in the hands of the International Secretary-Treasurer and acknowledged, and by the payment to the International Secretary-Treasurer, One Dollar and Fifty Cents ($1.50) per month per thousand, twenty-five (25) cents of which shall be the property of the Subordinate Lodge, and such insurance will thereby be kept in force and such member shall be entitled to all the benefits provided for in this Article, except that he shall not be entitled to the double indemnity benefit provided for herein, provided such member or members shall be in good standing in the International Brotherhood for at least twelve (12) consecutive months immediately prior to the making of such application for withdrawal card.

"Withdrawal cards will not be accepted for membership until all lapsed insurance premiums are paid to the International Secretary-Treasurer.

"Article XV, section 8, page 92. Should a member desire to withdraw from the International Brotherhood of Boilermakers, Iron Shipbuilders, Welders and Helpers of America, for the purpose

of going into business or any other occupation outside of the trade of this International Brotherhood, he may be granted a withdrawal card after sixty days' time upon payment of all indebtedness standing against him in the Subordinate Lodge to date by a majority vote of the Lodge. Withdrawal card must be deposited in International Brotherhood, when a member holding a withdrawal card returns to work at the trade, by the Secretary of Subordinate Lodge where such member returns to work; if he fails to deposit said card immediately, whether he works in an organized or unorganized shop or city, said withdrawal card stands revoked. After this withdrawal card has been accepted by the International Secretary-Treasurer's office, he will be entitled to all the benefits and privileges of the International Brotherhood.''

The evidence discloses the following situation: Joe Bogle was granted a withdrawal° card as of December 31, 1932. On July 12, 1934, he was called back to work by the railroad. He worked nine days during the month of July, a little over a day in the month of August, nineteen days in September, and two days in the month of October. On October first he paid a month's dues in advance, but the secretary declined to issue him a formal receipt on the ground that his dues were two months in arrears. The secretary claims that he did not have Bogle's withdrawal card at the time. On the other hand, there was evidence that he promised Bogle to keep it.

Our conclusions on the questions involved may be briefly summarized as follows:

(1) Members of the Brotherhood are charged with notice of, and are bound by, its constitution and by-laws. Howton v. Sovereign Camp Woodmen of World, 162 Ky. 432, 172 S. W. 687.

(2) The meaning and effect of the Brotherhood's constitution and by-laws, and the contract of insurance will be determined by the law of Kentucky and not by the law of appellant's domicile. Security Benefit Association v. Reising, 227 Ky. 804, 14 S. W. (2d) 150.

(3) Section 2, article VI, supra, requiring all applications for membership to be made on blank furnished for that purpose, signed by the applicant, and recom-

mended by a member in good standing and indorsed by two other members who know the candidate, applies only to applications for original membership. Section 3, article VIII, supra, requiring the original application for reinstatement with signature of delinquent, etc., applies only to cases where the member has been suspended. No application for reinstatement is necessary where the member has paid up all past dues and been granted a withdrawal card.

(4) All that is required of the member when he wishes to resume his relations with the Brotherhood is to pay one month's dues in advance and deposit his withdrawal card with the secretary of the subordinate lodge, whose duty it is to receive and forward the withdrawal card to the international secretary-treasurer's office. He being the agent of the International Brotherhood for that purpose, Sovereign Camp Woodmen of the World v. Durbin, 198 Ky. 538, 249 S. W. 754; Scruggs' Guardian v. Knights and Ladies of Security, 187 Ky. 544, 219 S. W. 1054; 19 R. C. L. p. 1220, it is no defense to an action on the certificate that the withdrawal card was not forwarded to and accepted by the international secretary-treasurer's office, where the nonaction in that respect was due solely to the local secretary's failure of duty.

(5) The claim that Bogle was not in good standing for the reason that when he paid his dues on October 1, 1934, he owed two months past dues, cannot be sustained. By the terms of section 8, article XV, supra, it is a condition precedent to obtaining a withdrawal card that the member pay all indebtedness standing against him in the subordinate lodge, and in the very nature of things the withdrawal card is itself a receipt for all past dues. Bogle elected not to keep his insurance in force during the time that he held his withdrawal card, and during the interval between the issuance of the withdrawal card and his return to work and paying one month's dues in advance he was not a member of the Brotherhood and not entitled to any insurance or other benefits at its hands. It follows that until he indicated his purpose to resume his standing in the Brotherhood he was under no obligation to pay any dues or premiums.

(6) If the secretary of the subordinate lodge had Bogle's withdrawal card in his possession when the

latter's dues were paid on October 1, 1934, for one month in advance, it was not necessary for Bogle to ask for the card and redeliver it to the secretary, but it was the latter's duty to transmit both the dues and the withdrawal card to the international secretary-treasurer's office. On the question of the local secretary's possession of the withdrawal card, we have on the one hand the positive testimony that at no time did Joe Bogle deposit the withdrawal card with him, but on the contrary he, on September 28th, asked Bogle to deposit his withdrawal card. On the other hand, we have the testimony of Mrs. Loveless, daughter of Joe Bogle, that she heard the following conversation between her father and the local secretary after her father was cut off in 1933:

"He said, 'What do you want to do about your withdrawal card,' and my father says, 'What would you do?' and Mr. Tohill says, 'Well, I'll hold your withdrawal card.' "

Also, we have the evidence of James Bogle, a son of Joe Bogle, who stated that on one occasion he was present at the home of John Tohill and heard him say that he would keep his father's withdrawal card. In addition to this, John Tohill admits that the withdrawal card was sent to him in March, 1933. We think the evidence that the withdrawal card was in possession of John Tohill, the local secretary, was not only sufficient to take the case to the jury, but to sustain the verdict.

It follows from what has been said that appellant was not entitled to a peremptory instruction.

The chief complaint of the instructions is that they do not submit certain issues which we have already discussed and held not essential to a recovery.

On the whole, we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.