## Brotherhood of Railroad Trainmen v. Swearingen.

(Decided December 18, 1914.)

### Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Insurance—Fraternal Associations—Beneficiary Cannot Sue Until Remedies Prescribed by Constitution of Association Are Exhausted.—The beneficiary in a certificate or policy of insurance

issued by a fraternal association, must, before bringing suit for the insurance due upon the death of a member, resort to such remedies as the Constitution of the Association may reasonably impose as conditions precedent to the bringing of an action for its recovery; but where this in good faith has been done by the beneficiary in accordance with the rules of the Association, and it arbitrarily refuses to act upon the claim, the beneficiary may then sue in a court of competent jurisdiction to enforce the payment.

2. Insurance—Representation in Application—When Question of its truth or Falsity Should Be Submitted to Jury.—Where in an action on an insurance policy the defence is made that false statements, material to the risk, were made by the insured in his application, and there is a contrariety of evidence as to whether they were true or false, the question should be submitted, under proper instructions, to the jury.

3. Insurance—When Question in Application Does Not Suggest a Disease Which, if Possessed by Insured, Would Invalidate Policy —Effect of Untruthful Answer Ignorantly Made.—Where in an application for insurance the question: "Have you ever been affected with any of the following complaints or diseases: any disease of the alimentary, genital or urinary organs?" was untruthfully given a negative answer by the insured, such answer will not prevent a recovery on the policy by the beneficiary on the ground that the insured was then affected with a kidney disease, if in making it the insured was ignorant of the meaning of the question and it would not necessarily have been understood by an ordinarily intelligent person as requiring an answer as to diseases of the kidneys.

ED. W. PFLUEGER for appellant.

F. J. HANLON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On February 3, 1911, Harry C. Swearingen, of Covington, signed an application for membership in Simon Kenton Lodge, 345, of the fraternal association known as the Brotherhood of Railroad Trainmen, and for a beneficiary certificate that would entitle him to benefits and insurance under the constitution and by-laws of the association. The application was presented to the lodge February 16, 1911. He was admitted to membership February 23, 1911. The beneficiary designated by his certificate was his mother, the appellee, Henrietta Swearingen. Harry G. Swearingen died January 1, 1912, and his mother, as the beneficiary under his certificate; furnished to the general secretary of the brotherhood proofs of his death, on January 22, 1912, which disclosed that

the cause of his death was Bright's disease and organic heart disease.

The Brotherhood of Railroad Trainmen is an unincorporated, secret fraternal society, having a grand lodge and subordinate lodges. Its main purpose, as shown by its constitution and by-laws, is the promotion of the welfare of its members, and, as a part of its plan of mutual assistance, it has a beneficiary department through which benefits are accorded members in case of disability or death. Membership in the order is restricted to employes in certain branches of the railroad service; the membership consisting of two classes, beneficiary and non-beneficiary. To beneficiary members are issued beneficiary certificates, which in appearance and provisions are much like insurance policies. The certificate states that the member is entitled to participate in certain benefits in case of disability, limited in amount by the constitution, and, in case of his death, that a different and larger sum shall, as therein provided, be paid to the beneficiary named in his certificate. No sum is specified in the face of the certificate, but reference must be had to the constitution to ascertain the benefits provided therein.

The appellant, Brotherhood of Railroad Trainmen, having refused to pay to the beneficiary, the appellee, Henrietta Swearingen, the sum provided by its constitution, she brought this action against it in the court below to recover same. As amended, the petition, in substance, alleges that Harry G. Swearingen made application for membership in the appellant brotherhood February 3, 1911; that his application was accepted and a certificate of insurance issued to him, by reason of which he became a member and was entitled to participate in the beneficiary department known as Class C, which class, according to the constitution of the brotherhood, provided for the payment of $1,500.00 in case of his death, to the beneficiary named in the certificate issued to him; that on the first day of January, 1912, while the certificate of insurance was in full force, Harry G. Swearingen died in the city of Covington, Kentucky; that he had theretofore and down to the time of his death complied with all of the provisions of the appellant brotherhood by paying the required premiums; that following his death and within the time required by the certificate of insurance, appellee, as the beneficiary under the same, submitted proofs of his death to appellant,

but that it retained the certificate and refused to return same to appellee or pay to her the $1,500.00 to which it entitled her.

The defense interposed by appellant's answer was: (1) That appellee did not exhaust her remedies within the order, for which reason the court was without jurisdiction of the action; (2) that Harry G. Swearingen had made false and fraudulent answers in his application as to his employment and as to his previous medical history and the condition of his health, which were warranties; (3) that the statements referred to were material representations, substantially untrue and fraudulent; and, if appellant had known the truth, it would not have issued to him the certificate.

The appellee by reply denied that the decedent was not employed in train or yard service at the time his application was presented and made; denied that he made any false or fraudulent statements at the time of giving the application with respect to the condition of his health; that such statements were warranties or material to the risk; or that, if appellant had known the truth, it would not have issued to him the certificate. Also denied that she did not exhaust her remedies as provided in the constitution and by-laws of the appellant organization, and admitted that she had brought suit in the Kenton Circuit Court before the beneficiary board of the appellant brotherhood passed upon her claim, but alleged that she was compelled to do so because it secured the certificate of insurance from her and refused to return it, which prevented her from enforcing her rights thereunder, as she was unable to determine what they were in the absence of the certificate; that that action was not, however, determined on its merits, but was dismissed by her without prejudice as soon as she obtained the certificate of insurance, which the court required appellant to file in the case. It was further alleged in the reply that appellant, its officers and agents adopted dilatory tactics to delay and defeat appellee's claim; that it had ample time after the date of her son's death, and before the insurance board met on January 8, 1912, to consider and pass upon her claim and reject or order it paid; but that it refused to act upon the claim at all, and that the provisions of appellant's constitution and by-laws in regard to appealing to the Beneficiary Board and the Board of Insurance are unreasonable rules and regulations, and, by reason

thereof, unenforceable. A rejoinder was filed by appellant controverting the affirmative allegations of the reply. After thus completing the issues a writing containing the following agreed facts was filed of record by the parties:

"It is agreed between the parties hereto that the amount provided by the constitution and by-laws of the defendant organization, payable to the beneficiary under class 'C,' as set forth in said constitution, is $1,350.00. It is agreed that the certificate attached to the pleadings in this case is the certificate issued to the deceased, Harry G. Swearingen. It is agreed that the decedent was in good standing, so far as payment of dues and assessments were concerned, at the time of his death. It is further agreed that the copy of the constitution and by-laws attached to the petition in this case is a true and correct copy of said constitution and by-laws, and is filed as evidence in this case for all purposes relative to the issue herein."

By an amendment to ner petition, appellee alleged that after Harry G. Swearingen became a member of the appellant association, and before his death, its constitution was so amended as to increase the amount payable to a beneficiary on the death of a member of Class "C" from $1,350.00 to $1,500.00, and this was admitted by appellant.

On the trial the jury returned a verdict in favor of appellee for $1,500.00. From the judgment entered thereon this appeal is prosecuted. The grounds relied on by appellant for a new trial were that the circuit court erred in overruling its motion for a peremptory instruction, also in giving instruction No. 4, and that the verdict was flagrantly against the weight of the evidence.

The peremptory instruction was asked by appellant on the ground that appellee had failed to show that she exhausted her remedies within the order before instituting her action, for which reason the action should have been dismissed. It appears from section 67 of appellant's constitution that there are three tribunals of the order empowered to act upon such claims as that of appellee. It is first presented, with the proofs of death, to the general secretary and treasurer. If that officer disapproves the claim, it is made his duty to refer it to the Beneficiary Board. If disapproved by that board, the claimant may appeal to the Board of Insurance,

whose action seems to be final. Section 76 of the constitution provides that if the claimant desires to appeal to the Board of Insurance, he must give to the general secretary and treasurer a written notice of the desire to appeal the claim from the decision of the Beneficiary Board to the Board of Insurance. Section 15 of the same instrument apparently fixes a time and place for the meeting of the Board of Insurance and the hearing of claims, and Section 75 provides: "No suit or action at law or equity shall ever be commenced upon any beneficiary certificate by any claimant until after such claimant by appeal has exhausted all remedies provided for in this constitution, within the time allowed by this constitution."

Although appellee's claim and the proofs of death were received by the general secretary and treasurer January 22, 1912, he did not notify appellee of his disapproval of it until April 18, 1912, nor did she receive notice until May 17, 1912, that the Beneficiary Board had disapproved the claim. This notice was given through the general secretary and treasurer. The notice advised her that she had the right of appeal to the Insurance Board, the association's tribunal of last resort, and that there would be no meeting of that board until the second Monday in January, 1913, which would defer final action on the claim eight months longer. On May 23, 1912, appellee, through her attorney, wrote to the general secretary and treasurer, telling him that she appealed from the decision of the Beneficiary Board to the Board of Insurance; demanded that that board take action upon it one way or the other without further delay, and protested against the delay that would ensue from the meeting of the board in January, 1913, insisting that any rule of the order requiring such delay was unreasonable and dilatory. January 18, 1913, appellant's general secretary and treasurer, in reply to a letter of January 14, 1913, from appellee's attorney, asking what action the Board of Insurance took on her claim, wrote the attorney that, as the appeal was not taken in accordance with the provisions of appellant's constitution, the Insurance Board did not act upon the claim of appellee. It appears, therefore, that appellant's Insurance Board neither approved nor rejected appellee's claim, but merely declined to entertain the appeal.

It will be conceded that where men organize themselves into a fraternal association, such as the one

under consideration, they may, by adopting a constitution and by-laws, provide reasonable rules and regulations for settling their own disputes and for the granting or refusing of benefits, and to this end establish their own tribunals of original, intermediate and appellate jurisdiction  It will also be conceded that the members of such an association must conform to the reasonable rules and regulations thereof, and exhaust their remedies within the association and before its tribunals, before the civil courts will take cognizance of their grievances.  Ky. Lodge No. 39, I. O. O. F. v. Limeback, 9 R., 320; Winterburg v. Brotherhood of Locomotive Firemen and Enginemen, 148 Ky., 501.  But we regard it unnecessary to enter upon a discussion of the reasonableness or unreasonableness of the rules established by the appellant association with respect to the awarding or rejection of benefits to its members, for, in our opinion, it is fairly apparent, from the evidence furnished by the record in this case, that appellee did comply with those rules, and did, in fact, appeal from the decision of appellant's Beneficiary Board to its Insurance Board in the manner, within the sixty days' time and upon such notice as was required by the provisions of its constitution above referred to.  If the action first instituted by appellee was premature insofar as it attempted to recover the benefit or insurance claimed under the certificate issued by appellant to her son, because brought before its Beneficiary and Insurance Boards had acted upon the claim, it, at least, accomplished its principal object, which was to compel the return by appellant of the certificate it had received from appellee with the proofs of her son's death and was improperly withholding from her.  The present action was not instituted by her until after the meeting of the Insurance Board in January, 1913, at which it failed to take cognizance of her appeal, which was practically a year after the death of her son.  Without saying whether the rules and regulations established by appellant's constitution for the adjustment of claims for insurance arising out of the death of its members are reasonable or unreasonable, it is patent that the manner in which they were taken advantage of by appellant in this case unreasonably delayed the determination of appellee's rights under the certificate to her son, of which she was made the beneficiary.  In our opinion, appellee did exhaust her remedies within the association;

therefore, the refusal of the trial court to grant the peremptory instruction on the ground urged by appellant was not error.

Whether appellee did, within sixty days after the rejection of her claim by appellant's Beneficiary Board, give it notice of her intention to take an appeal to the Board of Insurance, was treated by the trial court as a disputed question of fact which the court properly submitted to the jury under instruction No. 2, reading as follows:

"If you believe from the evidence that plaintiff did not, within sixty days of the rejection or disapproval of her claim by the Beneficiary Board of the defendant, give or cause to be given to the general secretary and treasurer of the defendant association, written notice of a desire and intention to appeal said claim from said Beneficiary Board to the Board of Insurance of defendant, you will find for defendant."

The finding of the jury was that appellee did give the written notice of her intention to appeal within the time indicated, and there was sufficient evidence to support its finding.

Section 120 of appellant's constitution provides:

"A candidate for admission to this (Simon Kenton) lodge by initiation shall have served at least six months as a railroad trainman, and must be actually employed in train or yard service in the jurisdiction of this lodge, and on the road named in his application at least three months prior to and at the time he makes application. The term 'railroad trainmen' herein mentioned shall be held to cover the following occupations: In road service—conductor, train baggageman, etc.; in yard service—yardmaster, assistant yardmaster, yard conductor, foreman, flagman, etc."

It appears that in his application for membership in the appellant brotherhood Harry G. Swearingen stated his occupation was that of assistant yardmaster in the employ of the Chesapeake & Ohio Railway Co., at Covington. If such was then his occupation, he was eligible for membership in the brotherhood. It is the contention of appellant that Swearingen made a false answer as to his occupation and that he was not then assistant yardmaster. As previously stated, the application was made out and signed by the decedent on February 3, 1911. It appears from the testimony of several witnesses introduced by appellant that for some months previous

to the date of his application the decedent had been in the employ of the Chesapeake & Ohio Railway Co. as assistant yardmaster. Some of these were uncertain as to when he was relieved or discharged as assistant yardmaster, but practically all of them agreed that he was so acting on February 3, 1911, the date of the application. According to McNamara, one of these witnesses, the decedent was not granted a discharge voucher as assistant yardmaster until February 7, 1911. Neal, the general yardmaster of the Chesapeake & Ohio Railway Co., testified that he relieved the decedent of his duties as assistant yardmaster because of temporary illness, but did not discharge him, and that he may have worked as much as two or three days in the beginning of February, 1911. L. C. Brink testified that the word "discharge" which appeared on the decedent's voucher of February 7th, did not necessarily mean that he was discharged from his position, but that it entitled him to get his money to that date. J. M. Pepper, a witness introduced by appellee, testified that he is a carpenter for the Chesapeake & Ohio Ry. Co., that he knew Harry G. Swearingen; that Swearingen was employed by the Chesapeake & Ohio Ry. Co. as a carpenter for several years, but that he was in its employ as assistant yardmaster until his sickness in June, 1911.

It further appears from the evidence that on February 3rd, the day that Swearingen made application for the beneficiary certificate in the Brotherhood of Railroad Trainmen, he appeared before its medical examiner, Dr. Beckett, who then examined him and recommended his admission; and, further, that a committee appointed by Simon Kenton Lodge, composed of C. Sanders, B. L. Marshall and J. C. Robinson, made an investigation of Swearingen and the facts stated in his application, and on February 23, 1911, made the following report:

"We, the undersigned Committee of Investigation, have carefully examined into the qualifications of Harry G. Swearingen and recommend that he be admitted to membership."

Carefully analyzed, the evidence furnished by appellant's witnesses shows that when Swearingen's application was signed and made February 3, 1911, he was in the employ of the Chesapeake & Ohio Railway Company as assistant yardmaster; that he was given a discharge voucher February 7, 1911, which did not necessarily in-

dicate that he was then actually discharged by the railroad company; and that the committee of the local lodge, charged with the investigation of his case, on February 23, 1911, reported him qualified for membership in the appellant brotherhood, and then recommended him for membership therein. It is true the books of the railroad company show that Swearingen did no work after February 3, 1911, but they do not show that he was, in fact, discharged in February. It may be inferred from the evidence that he laid off from work after February 3rd, on account of illness, but there was no positive evidence to that effect or that he was discharged from the railroad company's service prior to February 23, 1911. The question whether or not the decedent made false statements in his application for membership, in regard to his employment as assistant yardmaster, was subitted to the jury by a proper instruction, and their finding thereon being in favor of appellee, it cannot be said that there was no evidence to support it.

Appellant insists that the decedent made false statements in his application as to the condition of his health, especially in giving a negative answer to the question, "Have you consulted a physician during the last five years?" and that he was at that time afflicted with Bright's disease, which, if then known to appellant, would have caused the rejection of the application and prevented his becoming a member of the order. The only evidence introduced by appellant on this point was furnished by physicians, some of whom testified that they treated the decedent for a trouble of the kidneys several years before he became an applicant for membership in the appellant order. Perhaps one of them treated him within the five years next before the date of his application, for some ailment, but it is not apparent from the testimony for what he was treated, or that it was Bright's disease or other serious kidney trouble. The most positive witness among these physicians was Dr. C. C. Owens, who testified, in substance, that he treated Harry G. Swearingen as far back as 1907 for kidney trouble, which the following quotation from his testimony will better explain:

"He did not have symptoms that kept him from his duties at the county judge's office. He was able to go back and forth, but complained a good deal. I suppose it was a condition that did not absolutely mean Bright's disease, but he had kidney complaint, which a man will

have of ordinary good health, until in the spring of 1911.''

The kidney trouble, according to Dr. Owens' further testimony, in the spring of 1911 developed into Bright's disease. The doctor admitted, however, that he did not, while attending the decedent, or at any time, tell him or his family he had Bright's disease. His recollection was indefinite as to how long he treated Swearingen and the dates upon which the treatment was administered. He produced no books showing such dates, and admitted that his books of account contained no items of charge against Harry G. Swearingen, but said that such treatment as he gave him was charged to his father, F. B. Swearingen. Upon being asked as to the physical appearance of Swearingen, Dr. Owens said: ''He was a fine type of young manhood. He was very well developed, full blooded, and did not look like he ought to have been sick at all.'' It does not appear, from the testimony of Dr. Owens, that he treated the decedent in the months of January or February, 1911. Numerous witnesses introduced in behalf of appellee testified to an intimate acquaintance and daily association with Harry G. Swearingen, and that until the summer of 1911 he was a fine looking, robust young man, six feet in height and weighing over two hundred pounds; that he was industrious, and they never heard him complain of having any trouble with the kidneys; that he looked to be in perfect health down to the summer previous to his death. Among these witnesses was J. A. Robertson, who testified that Swearingen was a fine specimen of physical manhood; that he was present when he was initiated in Simon Kenton Lodge and that he then appeared to be a healthy man. Appellee testified that her son, Harry G. Swearingen, was five feet eleven inches in height, his average weight two hundred and thirty-five pounds, and that his general appearance in January and February, 1911, was that of a man of good health; that he had no kidney trouble prior to February 3, 1911; that he had worked in the capacity of a carpenter in June, 1906, and continuously until February, 1908, and then secured employment in the yards of the Chesapeake & Ohio Railway Co., where he continued at work until some time in February, 1911. Appellee further testified that her son was never treated for kidney trouble, or by Dr. Owens, prior to February 23, 1911. In addition to the above testimony of appellee's witnesses was the evidence furnished by

appellant's medical examiner, Dr. Beckett's personal examination of the decedent at the date of his application, which included an analysis of his urine by the approved scientific tests. This examination disclosed no disease of the kidneys and manifests the decedent's good health and fitness for membership in the appellant order.

It will be seen that appellee's evidence conduced to show that if Swearingen had Bright's disease, even in incipient form, in February, 1911, or prior thereto, neither he nor his family were aware of it; and that he was then or prior thereto afflicted at all with Bright's disease or other kidney disease was an issue of fact with respect to which there was a contrariety of evidence. This issue, with that as to whether the decedent's statement in the application of February 3, 1911, that he had not consulted a physician "during the last five years" was false, was properly submitted to the jury by the instruction marked No. 3, to which appellant makes no objection.

It is alleged in appellant's answer that the decedent also made a false statement in giving a negative answer to the following question in his application: "Have you ever been afflicted with any of the following complaints or diseases: Any disease of the alimentary, genital or urinary organs?" The contention as to the falsity of this answer rests upon the assumption that the decedent had been afflicted with kidney trouble or Bright's disease, which he intended by the foregoing answer to conceal. The evidence introduced by appellant to sustain this contention, as well as that presented by appellee to refute it, has already been referred to and commented upon. It will be observed that the application contains no such question as, "Have you ever had any disease of the kidneys?" or "Have you ever had Bright's disease?" and it is not perceived that the question, "Have you ever had any disease of the alimentary, genital or urinary organs?" would certainly be understood as conveying to the mind of an ordinarily intelligent person, not a medical or surgical expert, that an answer was demanded as to diseases of the kidneys. In other words, the question does not necessarily include diseases of the kidneys. At any rate, three physicians and an experienced life insurance agent agreed, in testifying, that the average layman would, or might, not understand the question as containing an inquiry as to diseases of the kidneys, or Bright's

disease. This question was submitted to the jury by instruction No. 4, which is the only instruction in the case to which the appellant objects. The instruction is as follows:

"If you believe from the evidence that the question, 'Have you ever been afflicted with ony of the following complaints or diseases—any diseases of the alimentary, genital or urinary organs?' did not convey to an ordinarily intelligent person, under circumstances such as described by the proof, that an answer was required as to diseases of the kidneys, and you further believe from the evidence that said question was not explained to decedent, Harry Swearingen, as requiring such an answer, and that such decedent did not know or understand and could not, by the exercise of such diligence and understanding, as persons of ordinary diligence and understanding ordinarily exercise under the same or similar circumstances to those in this case, then you will not find decedent's answer to said question untrue, even though you may believe from the evidence that decedent at the time he so answered said question had been afflicted with a disease of the urinary organs."

It is insisted for appellant that the instruction was misleading and unauthorized, because the decedent possessed more intelligence than the average layman as to the diseases mentioned in the question referred to in the instruction, and his experience respecting kidney troubles, resulting from his treatment for kidney disease received at the hands of several physicians, qualified him to understand the full import of the question. This contention rests upon a mere inference arising out of some of its evidence that the decedent had been treated by more than one physician for kidney trouble and not from any direct evidence tending to show him possessed of more than the average knowledge upon such subjects. We understand it to be a rule of the law of insurance that if an answer in the application is material and untrue, and relates to some transaction or act that the applicant at some time had knowledge of, the fact that he may have forgotten it when the application was prepared will not entitle him to the insurance, if its collection is resisted upon the ground that the application made material and untrue statements. But if the applicant is asked if he had a certain disease and in good faith answer no, and there is no evidence that he ever knew or had information that he had had such disease, or there

is contrariety of evidence as to whether he had such knowledge or information, the fact that his answer is literally untrue will not, of itself, defeat the collection of the policy. Blenke v. Citizens' Life Insurance Co., 145 Ky., 332.

In 2 Joyce on Insurance, Section 846, the principle under consideration is thus stated:

"There are two important factors involved in cases of concealment. One is the assured's knowledge and the other the insurer's knowledge. In both cases the knowledge may be actual, or rest upon a presumption based upon the fact that the circumstances are of such a character that they ought to be known, and may reasonably be presumed to be known. The assured could not reasonably be held to have concealed a fact of which he had no knowledge, actual or presumed, or one concerning which it cannot be said that he ought to have known it. Even the strict rule in marine insurance does not require this." Metropolitan Life Ins. Co. v. Ford, 126 Ky., 49.

The question, "Have you ever had any disease of the alimentary, genital or urinary organs?" is admittedly one not usually found in an application for insurance, and, as there was evidence to the effect that it would not necessarily be understood by a man of average intelligence, engaged in the railroad business, as suggesting kidney disease, the issue as to whether it was so understood by the decedent, if so, whether his answer thereto was false, was properly submitted to the jury, the above instruction, which seems unobjectionable in form, was necessary to enable them to understand and properly decide the question.

The evidence upon practically every issue of fact made by the pleadings being conflicting, under the practice obtaining in this jurisdiction, the case was one for the jury; and, as the instructions were substantially correct, and it cannot be said the verdict is flagrantly against the evidence, the judgment is affirmed. The whole court sitting.