## Security Benefit Association of Topeka v. Reising.

(Decided February 12, 1929.)

L. D. GREENE and S. L. GREENEBAUM for appellant.

ARTHUR C. GUNTHER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

The Security Benefit Association is incorporated in Kansas, and is a fraternal insurance society. It issued a certificate insuring the life of Emma Reising in the sum of $500. She died, and this action was brought to recover upon the certificate. The certificate provides as follows: "This certificate, together with the charter and the constitution and the laws of the society and all amendments to each thereof, which are made a part hereof, shall constitute the agreement between the member and the society."

Section 101 of the by-laws of the society is in these words: "In case any member holding a beneficiary certificate heretofore or hereafter issued, shall die by his own hand, whether sane or insane, the full liability of this Association to his beneficiaries shall be the amount actually paid by the members to the benefit fund."

The defendant by its answer pleaded the above facts, and alleged that Emma Reising committed suicide. On a trial of the case the plaintiff introduced proof tending to show that Emma Reising was out of her mind, and had so little mind that she did not know what she was doing, or that what she did would produce death. The court submitted the question to the jury, and they found for the plaintiff. The defendant appeals.

The instructions of the court follow the rule in Kentucky, but the defendant showed that in Kansas, the home of the corporation, a different rule prevails, and that no recovery can be had upon a policy and under the by-laws there, although the insured did not know what she was doing when she committed suicide.

The policy is a Kentucky contract, delivered in Kentucky. The defendant is doing business in Kentucky under the Kentucky statute. By that statute it is pro-

vided that all certificates issued to persons in Kentucky, by corporations transacting business in Kentucky, which contain any reference to the by-laws or rules of the corporation as forming part of the policy or contract, shall have same attached to the certificate, or printed on the face or reverse side thereof, and, unless so attached or printed, they shall not be received as evidence in any action for the recovery of benefits provided by the certificate, or considered a part of the contract between the parties. The section, however, concludes with these words in a proviso: ''But the provisions of this section and this subdivision shall not apply to secret or fraternal societies, lodges, or councils, which are under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and pay no commission, nor employ any agents, except in the organization and supervision of the work of local subordinate lodges or councils.'' Ky. Stats., sec. 679.

In order for the defendant to bring itself within this exception to the statute, it was incumbent upon it to plead the facts set out in the statute. While it undertook to set out some of these facts in its answer, it did not show that it does not pay commission or employ any agents except in the organization and supervision of the work of local subordinate lodges or councils. The answer is therefore insufficient to show that the defendant comes within the proviso of the statute. Nothing is provided about suicide in the certificate, and under the statute, the by-law cannot be considered, unless the defendant shows that it comes within the proviso. This it did not do, and, the pleading not stating a defense to the action, judgment for the plaintiff was proper under the pleadings, and cannot be disturbed here. Civil Code, sec. 386. In addition to this the precise question made here was before the court in Sovereign Camp, W. O. W., v. Havas, 217 Ky. 846, 290 S. W. 690, in these words: ''Nor is the refusal of the courts of this state to adopt the construction placed upon an insurance contract made in this state by a foreign corporation having its home office in another state, to adopt a construction and enforce a provision in such policy because such a construction has been adopted and enforced in the state of such foreign corporation, a failure to give full faith and credit to the laws of such other state within the meaning of the federal Constitution. The fact that the courts of Nebraska enforce the exception in such policies where the insured kills him-

self, sane or insane, does not give any extraterritorial effect to the opinions of its supreme court and are no more binding upon the courts of this state in determining whether they will enforce such a provision in a Kentucky contract than are the opinions of any other state.''

The laws of Kentucky regulate insurance contracts made in Kentucky. When a foreign corporation comes to Kentucky and does business in Kentucky under the Kentucky laws, it submits itself to the laws of Kentucky, and it does not bring with it the law of its domicile. Insurance is a matter that may be regulated by local law. The contract being made in Kentucky, and being a Kentucky contract, the meaning and effect of its provisions must be determined by the law of Kentucky. To hold otherwise would be to say that Kentucky may not regulate by law upon what terms a foreign corporation may do business in Kentucky. The proper construction and effect of a Kentucky contract must be determined by the law of Kentucky. In Supreme Council of Royal Arcanum v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771, and Modern Woodmen v. Mixer, 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384, it was held that by-laws of the corporation, upheld as valid in the home state, enter into its contracts made pursuant thereto, and control contracts in another state made subject to these by-laws; but here a different question is presented. This is what is the construction of the contract, and this must be controlled by the law of Kentucky. Such societies can only do business in Kentucky under ''an act to regulate and control . . . benefit societies,'' approved March 22, 1916. See Acts 1916, pp. 296-324. Section 16 provides: ''No foreign society shall transact any busniess herein without a license from the Insurance Commissioner.''

Section 5 regulates the benefits that may be provided for, and section 8 regulates what the certificates must specify. Such contracts made in Kentucky under a Kentucky license are governed by the laws of Kentucky as to their legal construction and effect. The words of such a contract bear the meaning which the law of Kentucky gives them, and, though a by-law made in another state is made a part of the contract, this does not bring into it the construction the by-law may receive there. Contracts made in Kentucky under its laws are naturally made by persons in view of these laws as entering into

them. The laws of another state are not in their contemplation, and the decisions of the courts of another state, unless made before this and brought to their notice, do not enter into the contract. Rights under an insurance contract made in Kentucky may not be defeated, unless the contract clearly so provides. National Union Fire Ins. Co. v. Edgewood Co., 209 Ky. 532, 273 S. W. 90; Niagara Ins. Co. v. Jeffrey, 215 Ky 644, 286 S. W. 846.

In Bank of U. S. v. Donnally, 8 Pet. 372, 8 L. Ed. 974, the United States Supreme Court thus states the rule: "The general principle adopted by civilized nations is, that the nature, validity and interpretation of contracts, are to be governed by the laws of the country where the contracts are made, or are to be performed."

To the same effect, see Northwestern etc., Ins. Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57; Mutual Life Ins. Co. v. Liebing, 259 U. S. 209, 42 S. Ct. 467, 66 L. Ed. 900. The well-settled rule in the state courts is thus stated in 5 R. C. L. p 972, sec. 54: "The important question to be first determined in cases of insurance involving a conflict of laws, is the place where the contract is in fact made or finally executed. When this question is solved, the determination of the questions as to the construction to be placed upon the terms of the contract, and of the laws which are to govern such construction, are comparatively easy, because it is an almost universal rule that the contract of insurance must be governed by the law of the state where such contract is finally consummated."

Under section 16 of the act, the corporation, to obtain a license, must file with the insurance commissioner a duly certified copy of its articles of association, its constitution, and its by-laws, also a copy of its contract, which must show that benefits are provided for. The purpose of the record is not only to guide the commissioner, but to furnish people in the state a record from which they may know their rights under insurance contracts made in this state. It would defeat the very purpose of the statute to hold that people may not contract with the corportion under the rule in this state for interpreting the by-laws so filed; for they contract for insurance on the faith of the record so filed, and need to look no further than the state law for its meaning and legal effect. To read into the statute, the construction of the by-laws by the courts of some other state, not filed in the record, would be to make the rights of the parties

to depend not on the record, but on matters of which the assured would have no notice, and open the door to fraud.

While the evidence was conflicting the court is unable to say that the verdict is against the evidence.

Judgment affirmed.