## Standard Accident Insurance Company of Detroit v. Bailey.

(Decided May 23, 1930.)

BEN V. SMITH & SON for appellant.

SANDERS E. CLAY for appellee.

Opinion of the Court by Judge Grigsby—Reversing.

This action was instituted in the Boyle circuit court by J. Walker Bailey against the Standard Accident Insurance Company of Detroit, Mich., appellant here, on a sick and accident policy. Appellee recovered the sum of $870, and appellant prosecutes this appeal.

The appellee made written application to appellant on the 26th day of January, 1924, for one of its standard sick and accident insurance policies, which application was accepted and policy issued on February 6, 1923. The policy, in so far as pertinent to a decision of this case, is as follows:

"Hereby insures J. Walker Bailey (hereinafter called the insured) whose occupation is a Operator and Leverman in Tower, against loss resulting from bodily injuries effected directly, exclusively and independently of all other causes through external, violent and accidental means, except when intentionally self-inflicted while sane or insane, and against disability from sickness which is contracted and begins not less than fifteen days from the date of this policy, subject to all conditions and limitations hereinafter contained, for the period or periods hereinafter specified, the first commencing on the Twenty-Fifth day of February, 1924, and each beginning and ending at twelve o'clock noon, Standard time of the place where Insured resides. The Principal Sum of this Policy in the First Year is Two Thousand Dollars ($2,000.00).

"Monthly Accident Indemnity Sixty Dolllars ($60.00).

"Monthly Sickness Indemnity Sixty Dollars ($60.00).

"Specific Indemnities.

"Article 1. If any one of the losses enumerated below shall result from such injuries alone, within one hundred and twenty days from the date of the accident, the Company will pay the sum specified opposite such loss and in addition will pay monthly indemnity as provided in Article 2 from the date of accident to the date of death, dismemberment or loss

of sight, if between such dates, by reason of such injury alone, the Insured shall be immediately, wholly and continuously disabled and prevented from performing any and every kind of duty pertaining to his occupation; but only one of the amounts so specified and the additional monthly indemnity will be paid for injuries resulting from one accident.

### "DEATH: LOSS OF LIMB OR SIGHT.

"For loss of *life* .................................................. Principal Sum
"For loss of *both hands* ......Double the Principal Sum
"For loss of *both feet* ...... Double the Principal Sum
"For loss *one hand and one foot*
                              Double the Principal Sum
"For loss of *either hand or foot*
     and loss of left *eye*......Double the Principal Sum
"For loss of *either hand* ............................ Principal Sum
"For loss of *either foot* ................................ Principal Sum
"For loss of left *eye* .................................... ½ Principal Sum
"For loss of *thumb and index finger of either hand*
                              1/3 Principal Sum

"Loss as above used with reference to hand, hands, foot or feet, means complete severance at or above the wrist or ankle joint, so that no part of the hand or foot remains, as used with reference to the eye or eyes means to irrecoverable loss of the entire sight thereof; and as used with reference to thumb and index finger means complete severance, at or above the metacarpophalangeal joints.

"The payment in any such case shall end this policy."

Another provision referring to indemnity for sickness is as follows:

### "MONTHLY SICKNESS INDEMNITY.

"Article 9. The Company will pay said monthly sickness indemnity for the period not exceeding one year during which the Insured shall be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of sickness, and if such disability shall continue for more than one year, the Company thereafter will pay one-fourth of said

monthly sickness indemnity for so long as it shall continue; but no indemnity shall be payable under this part for any period during which the Insured is not regularly treated by a licensed physician.''

Then two riders were indorsed on the policy as follows:

''This policy is hereby amended by eliminating therefrom any benefits for disability due to injury to or loss of sight of the Right eye and for loss of sight of both eyes.

''The Standard Accident Insurance Company.
''R-16.          (Signed) CHARLES C. BOWEN,
                                        Secretary.''

''Dated Detroit, Michigan.''

''It is expressly understood and agreed that any injury producing an Hernia or any disability resulting directly or indirectly from Hernia shall not be covered by this policy, anything in the policy to the contrary notwithstanding.

''The Standard Accident Insurance Company.
''(Signed) CHARLES C. BOWEN,
                                        Secretary.''

Appellee in his application represented that he had suffered from a partly detached retina of the right eye and a rupture on his right side, and in view of these two defects the two riders were indorsed on the policy. The one excluding any benefits for disability resulting directly on indirectly from hernia is not in question here, and hence will not be discussed.

On January 16, 1926, the appellee, while performing his usual duties as tower man, and without any external, violent, or accidental means suffered a ruptured blood vessel in his left eye. He had previously lost the sight of his right eye, which was the effect of the detached retina, and now, as the result of the ruptured blood vessel of his left eye, he has also lost the practical use of the left eye.

Appellee's claim is based on article 9, which is fully set out above. A paragraph in appellee's petition is as follows:

Plaintiff states that while said policy of insurance was in force, he suffered a disease or sickness

impairing the vision of his left eye so that on the 16th day of January by reason of said impaired vision and as a result thereof he had to discontinue his vocation of railroad telegraph operator, and became at said time wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation; that such disability has continued from said date up to the present."

Before answer was filed appellant petitioned to remove the action to the United States District Court for the Eastern District of Kentucky. Judge Cochran sustained a motion to remand the case to the Boyle circuit court for trial. After the case had been remanded to the Boyle circuit court, and before answer was filed, the appellee treated the petition for the removal as an answer and filed a reply thereto. The petition for removal alleged the terms and conditions of the policy generally, including article 9, covering monthly sickness indemnity, the rider indorsed thereon eliminating benefit for disability due to injury to or loss of sight of the right eye, and for loss of sight of both eyes; denied appellee suffered a disease or sickness impairing the vision of his left eye, and alleged appellee lost the sight of his left eye; had become wholly and continuously disabled as a result thereof, and that such disability was excepted in the policy for which appellant was not liable.

The reply completed the issues.

During the testimony of plaintiff it was announced in open court, and in the presence of the jury, that "No claim is made here for the loss of sight; the only claim made here is for the disease which brought about that loss of sight, disability, on the advice of—the doctor's advice telling him not to work."

It appears from the evidence that the plaintiff was a telegraph operator and switch-tower man. On the morning of January 16, 1926, the plaintiff went to work as usual, and shortly thereafter began to notice little particles like soot in front of his left eye; he worked on the balance of that day and on the following Monday went to consult Dr. Satler of Cincinnati, Ohio, a specialist of the eye, nose, and throat; he was on that day, January 18, 1926, ordered to the hospital by Dr. Satler, put to bed, and told to be quiet. He was in the hospital nine days.

Upon leaving the hospital he was instructed to go home, go to bed, and remain quiet. He returned to Dr. Satler February 10th after having remained in that quiet position, and in bed most of the time, when he was again instructed to be quiet, not to do any work, nor stooping, nor lifting. Other physicians prescribed the same treatment. Notice of the alleged disability was first given appellant on January 20, 1926, when the insured made claim in which he states:

"Q. What are your injuries? A. Ruptured blood vessel in left eye."

The next statement filed April 5, 1926:

"Q. What is the name of the disease which disabled you? A. Hemorrhage in left eye.

"Q. Have you ever been afflicted with this same kind of sickness? A. Similar trouble in 1921 in right eye."

Dr. Horace Reed on March 10, 1926, made report in part as follows:

"Q. What disease did your examination disclose as to cause of his disability and what clinical symptoms were present? A. Complicated cataract Rt. eye, detachment of retina left eye. . . .

"Q. When in your judgment could he have resumed at least a part of his work? A. Never.

"Q. Has claimant as far as you can ascertain ever before this attack suffered from any sickness similar to that described herein? A. Yes, in opposite eye. . . .

"Q. Give any facts which would throw any further light upon the case? A. This man had the same trouble with the opposite eye several years ago, which had a complicated cataract and hopelessly blind."

The appellee was asked to read the policy to the jury, and he could not do so. He was then asked to count the windows in the court room and he counted nine; asked the number of large electric lamps hanging from the ceiling and he said two; the attorney held up a hand, seated about 10 feet from appellee, and asked him which hand he was holding up, and he could not tell. The jailer,

Mr. Best, testified that there were twelve windows in the courtroom, and that there were seven large electric lamps suspended from the ceiling. Dr. Reed testified in part as follows:

"Q. In your opinion Doctor would you state whether or not Mr. Bailey is what would be termed a blind man in his left eye? A. I don't know how he is now.

"Q. Was he at the time that report was made out? A. He was what would be termed a blind man, yes.

"Q. When you say Mr. Bailey was blind you mean he did not have sufficient vision to take care of himself out on the street? A. To take care of himself out on the street or to carry on his wonted occupation. . . .

"Q. Do you think this man is going to improve any. A. No."

In the case of the Continental Casualty Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079, 1082, this court says:

"The application of this liberal rule of construction has been made to varying provisions of insurance policies and the extent of recovery thereunder —specifically to the term 'total disability,' which is never given its strict literal meaning of absolute helplessness or entire physical disability, but rather as inability to do substantially or practically all material acts in the transaction of the insured's business in his customary and usual manner. Fidelity & Casualty Co. of New York v. Hart, 142 Ky. 25, 133 S. W. 996; Ætna Life Insurance Co. v. McCullough, 195 Ky. 136, 241 S. W. 836; Fidelity & Casualty Co. of New York v. Logan, 191 Ky. 92, 229 S. W. 104. The term used must be construed in its plain, ordinary, and popular sense (1 C. J. 417), and the loss of the use of a member of the body is equivalent to the loss of that member. Can any one doubt that one who can barely distinguish daylight from darkness has lost his entire sight?"

The rider attached to this policy is as follows:

"This policy is hereby amended by eliminating therefrom any benefits for disability due to injury

to or loss of sight of the right eye and for loss of sight of both eyes.

"The Standard Accident Insurance Company.
" (Signed) CHARLES C. BOWEN,
Secretary"

We are of opinion that the indorsement quoted was attached for the purpose of excluding any benefit for disability due to injury to, or loss of, sight of the right eye, and for loss of sight of both eyes, because the application showed that the applicant already suffered from the partial detachment of the retina of the right eye, and on that account the company eliminated from coverage of the policy issued all disability due to blindness regardless of what the cause might be. We are further of the opinion that the evidence in this case shows that the plaintiff has lost the sight of both eyes within the meaning of this policy. In the case of Humphreys v. National Benefit Association, 139 Pa. 214, 20 A. 1047, 1048, 11 L. R. A. 564, it was held that the words, "total and permanent loss of the sight of both eyes," when used in a policy insuring a person who has but one eye, which fact is known to the insurer, means the loss of eyesight, and that a recovery may be had where the insured loses the sight of his remaining eye. In Murray v. Ætna Life Insurance Co. (D. C.) 243 F. 285, it was held that the ability to perceive light and objects, but no ability to distinguish or recognize objects, is not sight, but blindness. Also in the case of International Travelers' Association v. Rogers (Tex. Civ. App.) 163 S. W. 421, it was held that although the insured could see to some extent out of his injured eye, he could not use it for reading or rely on it to go about with, the evidence was held sufficient to show a loss of the entire sight of the eye, within the provisions of the policy.

Under the authorities above quoted, we are of the opinion that the motion for a peremptory instruction should have been sustained.

The judgment is therefore reversed for proceedings not inconsistent with this opinion.