## Brotherhood of Railroad Trainmen v. Woods.

(Decided Dec. 4, 1934.)

614

STEPHENS & STEELY and GRAY & FEATHERS for appellant.

H. H. OWENS and T. B. CULTON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In 1926 Reuben Woods joined the Brotherhood of Railroad Trainmen and acquired an insurance or benefit certificate for $2,800. In 1928, on a new application, he surrendered that certificate and became insured for $5,000, represented by another policy. In March, 1930, Woods drank some Jamaica ginger which resulted in paralysis, or, as it came to be known, "jake leg." He was left in a pitiable state of total disability. This included the practical loss of the sight in both eyes. See Woods v. Provident Life & Accident Insurance Company, 240 Ky. 398, 42 S. W. (2d) 499, in which we held that under the circumstances Woods' drinking of the liquid should be classed as an accident and entitled him to the benefit of his insurance policy of that class. In December, 1930, Woods made application to the brotherhood for the benefits of his insurance certificate because of his paralytic condition. The application and proofs submitted were specifically stated to be under the provisions of section 70 of the constitution and by-laws of the order. That section covers only claims addressed

to the benevolence of the brotherhood and for which there is no legal obligation to pay. See Grand Lodge, Brotherhood of Railroad Trainmen, v. Nolan, 196 Ky. 296, 244 S. W. 759; Fowler v. Brotherhood of Railroad Trainmen, 253 Ky. 786, 70 S. W. (2d) 669; Brotherhood of Railroad Trainmen v. Martin, 256 Ky. 436, 76 S. W. (2d) 269. After investigation, payment of the claim was refused. Thereafter this suit was instituted to recover the amount of the certificate.

The petition is rather meager, but there was evolved in the subsequent extended pleadings the issue as to the right of the plaintiff to the benefits under section 68 of the constitution, which is an obligation binding the brotherhood to pay the insurance benefits represented by the certificate where the holder shall have suffered the loss of a hand, or foot, or become 70 years of age, or for ''the complete and permanent loss of sight of one or both eyes'' (amended in 1931 limiting benefits to the loss of sight of both eyes). See Brotherhood, etc., of Railroad Trainmen v. Swearingen, 161 Ky. 665, 171 S. W. 455. On the trial, the case was treated by the court as though the claim came within the scope of section 68, rather than of section 70, and there was submitted to the jury only the issue of false representations in the application. The verdict was for the plaintiff, and from the judgment thereon the brotherhood brings this appeal.

There were two primary affirmative defenses made:

(1) That under the provisions of section 64 of the constitution of the brotherhood the plaintiff had lost his right of action by having failed to make proof of disability within six months after it occurred; and (2) that in the application for the certificate sued on the insured had made certain false and fraudulent representations. Each of these pleas gave rise to several subordinate issues. The legal battle has been vigorously fought upon all these lines as well as upon the question of the loss of sight, although upon this point the defense failed, for, as did the trial court, we regard the proof as establishing practical blindness. See Continental Casualty Company v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079, and Standard Accident Insurance Company v. Bailey, 235 Ky. 626, 32 S. W. (2d) 5.

Section 679, Kentucky Statutes, provides that all policies or certificates issued by an insurance corporation which contain any reference to the application of

the insured or the by-laws or rules of the corporation, either as forming part of the policy or contract, or as having any bearing thereon, shall have the same or the parts relied upon attached to the policy or printed therein, and, unless either so accompanying the policy or printed therein, the same shall not be received as evidence in any action for the recovery of benefits under it, and shall not be considered a part of the policy or contract. It is further provided:

> "But the provisions of this section and this subdivision shall not apply to secret or fraternal societies, lodges, or councils, which are under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and pay no commission, nor employ any agents, except in the organization and supervision of the work of local subordinate lodges or councils."

Although the defendant questions the sufficiency of the plaintiff's pleadings, they seem sufficient to raise the issue as to whether the brotherhood was entitled to the exemptions of the statute and therefore could rely upon the provisions of its constitution and by-laws which were made a part of the contract of insurance only by reference and not by attachment or incorporation in the instrument in the manner provided by the statute. The question thus raised is whether there was a conversion of the brotherhood from a fraternal benefit society to a commercial organization.

It appears that in 1883 the brotherhood was organized as a union or secret fraternity of railroad yardmen and trainmen. The plan consists of a grand lodge and subordinate lodges now numbering 960 in the United States, Canada, and Newfoundland. It is not incorporated, but operates under a constitution and general rules which are subject to amendment at triennial conventions of elected delegates. Its avowed purpose is to promote the welfare and advance the interests of its members and to protect their families by the exercise of benevolence. But, according to the evidence, it is essentially and primarily a labor union, and does not operate for profit. See, for detail statement of the character and nature of the organization, Clark v. Grand Lodge of Brotherhood of Railroad Trainmen, 328 Mo. 1084, 43 S. W. (2d) 404, 88 A. L. R. 150.

Funds for the mutual financial assistance and pay-

ment of insurance certificates are obtained by assessments through departments of limited insurance, and pensions, each of which is independent one from the other and from other departments of the order. Reference may be made to our several cases cited above involving these departments and their respective liabilities. The beneficiary or insurance department progressed from a plan which called for assessments only upon the death of an insured member to a definite monthly assessment without regard to the age of the member. Both certificates of insurance issued to the appellee, Woods, were by or in this department. The record discloses that in 1931 actuaries reported that the fund of this beneficiary insurance department, which is equivalent to an insurance reserve, was depleted to the point of 49 per cent. solvency, with bankruptcy inevitable, without a change in the plan or an excessive increase in monthly assessments. Thereupon a new plan of insurance called the "Individual Reserve Insurance Department" was inaugurated. This called for assessments based upon a member's age and what is regarded as a solid actuarial foundation. It is separate and independent from the beneficiary department, of which the appellee was a member. Those holding beneficiary certificates of that department were given the option of exchanging that form of insurance for a certificate issued under the new plan without medical examination or of obtaining such new insurance as additional protection upon passing the prescribed physical examination. This transfer or acceptance was purely voluntary. However, the Grand Lodge authorized the employment of members of the brotherhood to preserve the membership and to explain the new plan and submit its advantages to the brethren. They were designated as "Transfer Representatives." For the first twelve months these men were paid a commission based upon the transfers they had effected. Before this the order had periodically had salaried organizers for the purpose of increasing the membership of the different lodges. There have never been any other paid representatives or solicitors.

It is the argument of the appellee that the employment of the organizers or solicitors of new members, and later of men upon commission to obtain the exchange of insurance from one class to another, requires an adjudication that the brotherhood is not such a society as is entitled to the exemption of section 679 of the

Statutes, above quoted. The statute expressly permits the employment of agents for compensation in the "organization and supervision of the work of local subordinate lodges or councils." The testimony conclusively shows the appellant is not a corporation, and clearly brings the organizers within the permission of the statute. In relation to the other paid representatives for the installation and development of the individual reserve insurance department, we cannot construe the statute as strictly as does the appellee. This was service wholly among the members of the fraternity, and only sought to establish its insurance finances upon a sound basis by having the brethren accept new policies for old. This was work within the organization, and was for the mutual benefit and protection of its members. This portion of section 679 was construed in Finch v. Bond, 158 Ky. 389, 165 S. W. 400, 402. There was involved the character or nature of a fraternal association, styled National Council of Knights and Ladies of Security. It was an incorporated society, and had offered to its members a small prize by way of compensation for procuring new applications for membership. It was contended that this was the paying of a commission or the employment of an agent within the meaning of the statute and took from the society its character as a fraternal organization and converted it into an old line company within the statutory definition. We wrote:

"But, we cannot agree to this reasoning; it was clearly the Legislative purpose in the enactment of that amendment to make a distinction between old-line companies who were operated purely for profit, and fraternal organizations not operated for gain but for the mutual benefit and protection of its members. The mere fact that a fraternal organization offers to each and all of its members, and no one else, a small prize or compensation for bringing in new applications for membership is not such a payment of commission or employment of agents as will take from the organization its character as a fraternal society."

Our conclusion therefore is that the defendant was proved to be within the terms of the exemptions, and that its constitution and general rules were properly regarded as a part of the contract for all purposes. The character of the association being so established, there is no question as to the member being chargeable with

knowledge of them nor as to the efficacy of their incorporation in the contract by reference. Brotherhood, etc., of Railroad Trainmen v. Swearingen, supra; Bright v. Supreme Council, C. K. & L. A., 183 Ky. 388, 209 S. W. 379; Grand Lodge, Brotherhood of Railroad Trainmen, v. Nolan, supra; Supreme Tent, Knights of Maccabees, etc., v. Dupriest, 235 Ky. 46, 29 S. W. (2d) 599.

That part of section 64 of the constitution which the defendant has invoked is as follows:

"All right of action upon beneficiary certificates shall be absolutely barred, unless proofs of death or total and permanent disability shall be forwarded to the General Secretary and Treasurer, as hereinafter required, within six months after such death or disability occurs. * * *"

The appellee contends that the pleading undertaking to present this defense of limitations was defective as offending the rule against hypothetical or argumentative pleading. Newman's Pleading and Practice, secs. 256, 257; 49 C. J. 90. The pleadings in the case are as unusual as they are numerous. Both parties amended more than once, and in several particulars omissions and defects were cured by the pleading of the adverse party. The petition was not sufficient to present a cause of action, but there was no demurrer to it. The plaintiff had filed proofs of disability under the provisions of sections 70 and 71 of the constitution for total disability on account of paralysis, and that condition was set up in the petition as giving him the right of recovery under the certificate. The condition of disability without any of the losses specified in section 68, as referred to above, did not create an absolute legal right to the benefits of his certificate, but gave him only the right of appealing to the grace or discretionary action of the board established by the brotherhood to pass upon such claims. The defendant traversed the petition, and then affirmatively pleaded that the plaintiff did not come within the coverage of section 68. This was not denied in the reply, but an effort was made to plead around the discretionary terms of section 70. Two amended answers and rejoinder came in. The third answer again set up the terms of section 68, and averred that the plaintiff did not come within their scope. Its second paragraph set up facts showing that the plaintiff had not complied with the terms of the constitution and general rules relating

to the filing of proofs under section 68. The third paragraph recited that the allegations of the first two paragraphs were not waived but insisted upon, and then in anticipation it averred: "If it should hereafter appear that the alleged complete and total loss of eye sight occurred upon the 29th day of March, 1930, then this defendant pleads and relies upon Section 64 of the Constitution" as a bar to the action. Proceeding, the terms of that section were set up and facts alleged showing that proofs had not been filed in time, and the conditional plea was repeated. A demurrer to paragraph 2 was sustained. There was only left as a basis for the "if" pleading the mere allegation that the plaintiff had no claim under section 68. On these things the plaintiff joined issue. There were other defenses and responses in these several pleadings which are not material to the point under consideration now.

Since the defendant brought into the case the issue as to the plaintiff's right to recover under section 68 (which alone gave rise to an enforceable claim), it would be unfair to deprive it of a defense against that claim. Nevertheless the point must be decided under the rules of pleading and not under the rules of reciprocity. Considering the character of the pleadings and the fact that there was a trial on the merits, with the familiar general effect of curing technical defects in pleading, we construe the defendant's plea as an alternative pleading rather than a hypothetical one. Section 113, Civil Code of Practice.

The evidence of plaintiff was that two or three days after he drank the poisonous concoction, and while at work as a yard switchman on March 29, 1930, "I was stricken all over the body. It just hit me all over my body, feet, legs, arms, eyes and everything." Specifically, he said: "At the time I broke down my eyes were almost out on me; couldn't see to walk or to do nothing." He could not see the lantern he had in his hand. Since then Woods has not been able to do any kind of work. At times he can see nothing at all. There has been no improvement in his sight, but rather his eyes are a little worse now than when he was stricken.

In October, 1930, Woods filed a petition for benevolence, under section 70 of the constitution, with his local lodge in Corbin. It bears the approval of the lodge given at a meeting held on October 21, 1930. This form, however, is stated in the paper and in section 71 of the

general rules to be merely an application to the general secretary and treasurer of the order for blanks on which to make proof of disability. This petition was not sent to that officer until December 13, 1930. The complete "Declaration of Claimant for Benevolent Claim" and the supporting statement of a physician (constituting proof of claim) were received at the office of the Grand Lodge on January 5, 1931. The applicant's statement declares his disability to be paralysis of "hands, feet, legs and body, neck and eyes," and that it occurred on March 29, 1930. The supporting affidavit of the doctor makes no reference to his eyes. The only reference in the record to the cause of delay in filing proof of disability is the testimony of plaintiff that "we figured on getting well until it run for I guess ten or twelve months before we turned it in."

It appears, therefore, that there has never been any proof of loss of eyesight; consequently no filing of a claim within the terms of section 68. Section 69 provides a different procedure and forms for proof under section 68 than that required for proof under section 70. If, however, in view of the subsequent investigation and circumstances, the appellee be given the benefit of a doubt and the proof filed be regarded as entitling him to consideration under section 68, then there was a lapse of more than nine months. This brings the claim within the letter of the limitations of section 64 barring all right of action on the insurance certificate.

Forfeiture stipulations are not favorites either at law or in equity. Too often they tie a man's hands in advance so that he cannot take hold of something to which he has a moral right. The least favored of forfeitures are those founded upon mere delay. Accordingly, such clauses will be strictly construed against a party who invokes them. Enforcement will not be decreed except under such strict construction and a clear establishment of the right of that remedy. Cooley's Briefs on Insurance, p. 5910. But the parties to an insurance contract, like any other, may expressly provide that the giving of notice or filing of proofs of claim under it shall be a condition precedent to liability unless the time fixed is unreasonably short. In Fidelity & Casualty Company v. Hart, 142 Ky. 25, 133 S. W. 996, 998, it is said:

"It may be conceded that where the policy of insurance requires the giving of notice of injury or

illness, and specifies a time certain within which the notice must be given, the condition will be enforced. What the parties to the contract have themselves written down in it as an essential ingredient of a basis for a claim under it may be regarded by the courts as of the essence of the contract, for it may not be assumed that the parties would have entered into the engagement otherwise. There is no prohibition against their contracting for limited liability, or for liability of the insurer conditioned upon the other party's compliance with specified requirements of the contract.''

In Brady v. Mutual Benefit Department of Order of Railway Conductors, 215 Ky. 177, 284 S. W. 1045, 1046, which involved an insurance certificate in a companion or similar organization, the law is thus stated:

''Inasmuch as the policy provides for notice of the death of a member and requires proof thereof upon a certain form within a given time, it was necessary for the beneficiary to prove the death of insured on the required form and tender the same within the time limited as a condition precedent to the right of the beneficiary to recover, unless the association denied all liability.''

See, also, Cyclopedia of Ins., Couch, sec. 1527; Cooley's Briefs on Ins. p. 5908; 26 C. J. 373; 14 R. C. L. 1325; Standiford v. American Ins. Co., 208 Ky. 731, 271 S. W. 1042; American Bonding Co. v. Ballard County Bank's Assignee, 165 Ky. 63, 176 S. W. 368; Staples v. Continental Insurance Co., 223 Ky. 842, 5 S. W. (2d) 265; Security Benefit Ass'n v. Reising, 227 Ky. 804, 14 S. W. (2d) 150; Haselden v. Home Ins. Co., 247 Ky. 530, 57 S. W. (2d) 459; Prudential Ins. Co. v. Dismore, 254 Ky. 725, 72 S. W. (2d) 433; U. S. Fidelity & Guaranty Co. v. Miller, 237 Ky. 43, 34 S. W. (2d) 938, 76 A. L. R. 12. The specification of time within which notice or proofs of loss shall be given or made makes time of the essence of the provision, and it must be complied with unless performance is excused or compliance waived. Couch's Cyc. of Insurance, secs. 1538, 1538a; Employers' Liability Assurance Corp. v. Roehm, 99 Ohio St. 343, 124 N. E. 223, 7 A. L. R. 182.

If the insured has suffered such a loss or disability that there could be no doubt as to its result, such, for example, as the immediate severance of a leg or the de-

struction of an eyeball, there could be no question as to when the term of limitations for making proof of claim began. Here, however, there was a mysterious chemical action upon the whole body and slight vision remained. There was uncertainty and hope. An insured person should be given reasonable time in which to determine the results of such conditions. We think the proper interpretation of such limitation or forfeiture clauses is that the proofs must be filed within six months after it is known or reasonably apparent that the condition is permanent, or, as in this case, that the insured had actually lost the sight of either eye. The insurer is not concerned financially with the fact that the insured has suffered affliction unless its nature is such as to create a liability on its part. As stated in Fidelity & Casualty Company v. Hart, supra:

"And until such liability has been created, or until the causes which would finally result in the liability have concurred, it is not entitled to be notified of the fact. * * * If the disease manifests itself from the beginning as a total paralysis of the two limbs, and is such as in its nature is a permanent paralysis, the preliminary notice is then due. However, until there is a total paralysis of the two limbs, and until it is reasonably apparent that it is permanent, there is not a ground for a claim for indemnity under the policy. It is only when the claim may be said to be potential, that the disability is begun for which the insured may claim, that the preliminary notice is due, and then only within two months of such beginning."

This is a humane consideration and a reasonable construction of a harsh contract. It is in accord with the general interpretation of such provisions. Couch's Cyc. of Ins. Law, sec. 1538g; Cooley's Briefs on Insurance, vol. 7, p. 5921 et seq.; 1 C. J. 475; 14 R. C. L. 1334; Kaneft v. Mutual Ben. H. & Acc. Ass'n, 102 Neb. 87, 166 N. W. 121; Jennings v. Brotherhood Acc. Co., 44 Colo. 68, 96 P. 982, 18 L. R. A. (N. S.) 109, 130 Am. St. Rep. 109; Employers' Liability Assur. Corp. v. Roehm, supra; Hawthorne v. Travelers' Protective Ass'n, 112 Kan. 356, 210 P. 1086, 29 A. L. R. 494; Annotation, 76 A. L. R. 117. Compare Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Maryland Cas. Co. v. Burns, 149 Ky. 550, 149 S. W. 867; Southern Surety Company of New York v. Heyburn, 234 Ky. 739, 29 S. W. (2d) 6.

In applying the limitation clause of section 64 to the evidence, we think the condition of the appellee was such that he actually or apparently realized after the lapse of three months from the time he suffered the paralytic stroke that he had practically and permanently lost his eyesight. From the beginning he was totally paralyzed, and the condition of his eyes, as he testified, never got any better. Perhaps he realized it sooner, but, allowing a period of three months as a reasonable time, it was more than six months thereafter before he complied with the provisions of his contract respecting the filing of proofs. The defendant was therefore entitled to a directed verdict on this account, unless its subsequent acts constituted a waiver of the delay.

After receiving the proofs or claim above referred to, the officers of the brotherhood had Woods go to Lexington for examination by a physician, and also had him examined locally by two other doctors. It may be significant that section 69 of the general rules which prescribes the procedure for obtaining the benefits of section 68 provides that the claimant shall submit to medical or surgical examination by doctors chosen by the brotherhood, while section 71, relating to the submission of claims under section 70, does not. The proofs filed by Woods were retained, and investigation as to his condition continued to be made for some time. For almost two years after he was stricken Woods continued to pay his lodge dues or assessments. These things are relied upon as waiver of delay or of failure to file proofs specifically under section 68.

As in the matter of the effect of provisions relating to the time of filing proof of loss or disability—dependent upon whether they are conditions precedent or conditions subsequent—so too is there a difference in the matter of waiver through denial of liability. If the acts relied upon as constituting waiver were done before the time for filing proofs expired, and they were of such character as to lull the claimant into repose, or if liability is prematurely denied so as to make the filing seemingly useless, that is one thing—an election to reject without proof. If after the time shall have expired liability is denied or tardy proofs are received and investigation made, the fact that the insurer made an investigation of the claim and of its merit and then rejected it—that is quite another thing. It was a matter resting with the insurer whether it would or would not

pay the claim, even though proofs had been delayed beyond the stipulated time. Dixon v. German Ins. Co., 11 Ky. Law Rep. 1001; Corey v. Niagara Fire Ins. Co., 243 Ky. 34, 47 S. W. (2d) 955; U. S. Fidelity & Guaranty Co. v. Miller, supra.

While, as argued by appellee, the insurer may not treat a contract valid for the purpose of collecting premiums and invalid for the purpose of paying indemnity (Kentucky Live Stock Ins. Co. v. Stout, 175 Ky. 343, 194 S. W. 318), nor collect and retain premiums while disavowing the validity (Glens Falls Ins. Co. v. Elliott, 223 Ky. 205, 3 S. W. [2d] 219), those rulings are not in point here. There was no question of validity of the policy—at least, in the connection under consideration—but only the question of a release from liability through failure to meet the condition pertaining to the timely filing of a claim or proof. It must be remembered also that this was a labor union and secret fraternity, with benefits accruing through mere membership as well as those arising from the insurance feature. The question was the claimant's right to indemnity for a certain disability. The presentation of a claim on that account under an accident or sickness policy does not ordinarily terminate the contract.

We are of the opinion, therefore, that the evidence does not establish a waiver of the condition of time attached to the filing and proving the claim. No other questions are decided.

The judgment is reversed.